IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| PATRICK BOLGER, | ) | CASE NO. 1:10-CV-1604 |
| | ) | |
| Plaintiff, | ) | |
| | ) | **MAGISTRATE JUDGE McHARGH** |
| v. | ) | |
| | ) | |
| COMMISSIONER OF | ) | **MEMORANDUM OPINION** |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

This case is before the Magistrate Judge pursuant to the consent of the parties. (Doc. 13). The issue before the undersigned is whether the final decision of the Commissioner of Social Security (the "Commissioner") denying Plaintiff Patrick Bolger's applications for a Period of Disability and Disability Insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(i) and 423, and Supplemental Security Income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq*., is supported by substantial evidence, and therefore, conclusive.

For the reasons set forth below, the Court AFFIRMS the decision of the Commissioner.

## I. INTRODUCTION & PROCEDURAL HISTORY

On November 6, 2006, Patrick Bolger ("Plaintiff" or "Bolger") protectively filed applications for a Period of Disability and Disability Insurance benefits and Supplemental Security Income benefits alleging that he became disabled on October 27, 2006, due to suffering from two herniated discs in his back and bipolar disorder. (Tr. 90-99, 101-03, 120). Bolger's applications for benefits were denied initially and upon reconsideration. (Tr. 45-48). He timely requested and was granted an administrative hearing before Administrative Law Judge Peter Beekman (the "ALJ" or "ALJ Beekman"). (Tr. 76, 86).

On August 10, 2009, ALJ Beekman conducted a hearing wherein Plaintiff, represented by counsel, appeared and testified. (*See* Tr. 21-44). Vocational Expert, Barbara Burk (the "VE"), and Medical Expert, Dr. Joseph Steiner (the "ME") also appeared and testified. *Id.* On October 30, 2009, the ALJ issued a written decision denying Plaintiff's applications for benefits. (Tr. 8-20). In his review of Plaintiff's applications, ALJ Beekman applied the five-step sequential evaluation analysis,[1] and concluded that Plaintiff was not disabled. *Id.* Subsequently, Bolger requested review of the ALJ's decision from the Social Security Appeals Council. (Tr. 4). However, on June 10, 2010, the Appeals Council denied Bolger's request, thereby making the ALJ's decision the final decision of the Commissioner. (Tr. 1-3). Plaintiff now seeks judicial review of the ALJ's decision

---

[1] The Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a determination as to "disability." *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The Sixth Circuit has summarized the five steps as follows:

(1) If a claimant is doing substantial gainful activity – i.e., working for profit – she is not disabled.

(2) If a claimant is not doing substantial gainful activity, her impairment must be severe before she can be found to be disabled.

(3) If a claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

(4) If a claimant's impairment does not prevent her from doing her past relevant work, she is not disabled.

(5) Even if a claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that accommodates her residual functional capacity and vocational factors (age, education, skills, etc.), she is not disabled.

*Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

pursuant to 42 U.S.C. §§ 405(g) and 1383(c).

Plaintiff, born on June 24, 1959, was forty-seven years old on his alleged onset date, and considered as a "younger person" for Social Security purposes. (Tr. 19, 45); 20 C.F.R. §§ 404.1563(c), 416.963(c). During the course of the application appeal process, Plaintiff turned fifty years old. (*See* Tr. 24). He is now considered as a "person closely approaching advanced age." 20 C.F.R. §§ 404.1563(d), 416.963(d). Bolger graduated from the twelfth grade and has prior experience working as a house repairer, performing painting and general home construction projects. (Tr. 24, 34). His date last insured for Disability Insurance benefits was June 30, 2008. (Tr. 114).

## II. **ALJ'S DECISION**

After completing a review of the record, ALJ Beekman determined that Bolger was not disabled under the Social Security regulations. (Tr. 8-20). At step one of the sequential evaluation analysis, the ALJ found that Bolger had not engaged in substantial gainful activity since his alleged onset date of October 27, 2006. (Tr. 10). At step two, ALJ Beekman ruled that Plaintiff suffered from two severe impairments: bipolar disorder and degenerative disc disease of the lumbar spine. *Id.* But, at step three, ALJ Beekman concluded that Plaintiff's severe impairments did not individually or in combination meet or equal one of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 10-12).

Before proceeding to step four, ALJ Beekman determined that Bolger had the following residual functional capacity ("RFC"):

> [T]o perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with restrictions. Specifically, Mr. Bolger can flit [sic] and carry up to 20 pounds occasionally and ten pounds frequently. In an eight-hour day, Mr. Bolger can stand for four hours, walk for four hours, and sit for four hours, with the ability to alternate

3

> between sitting, standing, and walking at will. He cannot climb ladders, ropes or scaffolds. He can occasionally stoop, crouch, and climb stairs or ramps. He can frequently balance, kneel, and crawl. He cannot perform complex tasks, but is able to perform simple, routine tasks. He is limited to work with no production quotas. He cannot perform work involving arbitration, confrontation or negotiation. He cannot perform work involving more than minimal interaction with the public.

(Tr. 12). At step four, the ALJ ruled that Bolger could not return to his past relevant work because the exertional demands of that work exceeded his current RFC. (Tr. 18). Notwithstanding, at step five, ALJ Beekman held that Plaintiff could perform other jobs which existed in significant numbers in the national economy, such as that of a fast food worker, lunchroom attendant, or as a cashier or ticket seller. (Tr. 19-20).

### III. DISABILITY STANDARD

A claimant is entitled to receive Disability Insurance and/or Supplemental Security Income benefits only when he establishes disability within the meaning of the Social Security Act. *See* 42 U.S.C. §§ 423, 1381. A claimant is considered disabled when he cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months." *See* 20 C.F.R. §§ 404.1505, 416.905.

### IV. STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial evidence, and whether, in making that decision, the Commissioner employed the proper legal standards. *See Cunningham v. Apfel*, 12 F. App'x 361, 362 (6th Cir. 2001); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the

evidence. *See Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed. *Id.* The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this Court would resolve the issues of fact in dispute differently or substantial evidence also supports the opposite conclusion. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). This Court may not try this case de novo, resolve conflicts in the evidence, or decide questions of credibility. *See Garner*, 745 F.2d at 387. However, it may examine all evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

## V. ANALYSIS

Bolger contests ALJ Beekman's decision on two grounds. First, Plaintiff avers that the ALJ's decision should be reversed because he failed to assign appropriate weight to the opinions of Plaintiff's treating physician, Dr. Howard Friedman, and consultative examiner, Dr. Michael Harris. Bolger contends that had the ALJ given appropriate weight to either of these doctors' opinions, the ALJ would have found him to be disabled. Second, Bolger challenges the ALJ's failure to deem his degenerative disc disease of the cervical spine as a severe impairment. Because the undersigned finds that the ALJ reasonably reviewed and evaluated the evidence before him and that substantial evidence supports his decision, the Court rejects both of Plaintiff's arguments.

### A. Medical Opinion Evidence

It is well-established that an ALJ must consider all of the medical opinion evidence appearing in the claimant's file. *Walton v. Comm'r of Soc. Sec.*, 187 F.3d 639 (6th Cir. 1999) (Table); 20 C.F.R.

5

§§ 404.1527, 416.927. Moreover, the ALJ must give special attention to the findings of the claimant's treating sources. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). The so-called "treating source doctrine" recognizes that physicians who have a long-standing treatment relationship with an individual are best equipped to provide a complete picture of the individual's health and treatment history. *Id.*; 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Opinions from such physicians are entitled to controlling weight if the opinion is (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "not inconsistent with the other substantial evidence in the case record." *Wilson*, 378 F.3d at 544.

Even when a treating physician's opinion is not entitled to controlling weight, the ALJ must apply specific factors to determine how much weight to give the opinion. *Id.* These factors include: the length of the treatment relationship, the nature and extent of the treatment, how well the physician's opinions are supported by other medical evidence, the extent to which the physician's opinions are consistent with the record as a whole, whether the physician is an expert in the particular field of practice for which he/she is treating the claimant, and any other factors that may support or contradict the opinion. 20 C.F.R. §§ 404.1527(d)(2)-(6), 416.927(d)(2)-(6). The regulations also require the ALJ to provide "good reasons" for the weight he/she ultimately assigns to the treating source's opinions. *Id.*

The Sixth Circuit announced that the good reasons requirement serves a two-fold purpose. First, "the explanation lets claimants understand the disposition of their cases, particularly where a claimant knows that his physician has deemed him disabled and therefore might be bewildered when told by an administrative bureaucracy that [he] is not, unless some reason for the agency's decision is supplied." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007) (*quoting Wilson*, 378 F.3d at 544) (internal quotations omitted). Second, "the explanation ensures that the ALJ applies the

6

treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Id.* at 243. Remand is appropriate when an ALJ fails to provide adequate reasons explaining the weight assigned to a treating source's opinions, even though "substantial evidence otherwise supports the decision of the Commissioner." *Kalmbach v. Comm'r of Soc. Sec.*, 409 F. App'x 852, 860 (6th Cir. 2011) (*quoting Wilson*, 378 F.3d at 543-46).

     Plaintiff's appeal is based upon medical opinions offered by two physicians, Drs. Michael Harris and Howard Friedman. Dr. Michael Harris performed a consultative examination of Plaintiff on February 27, 2007. He noted that Plaintiff complained of sharp pains in his lower back which radiated down to his right leg causing numbness and tingling. Dr. Harris also acknowledged that Bolger suffered from sleep disturbance, depression and hallucinations at times. Plaintiff informed Dr. Harris that he had stopped drinking alcohol two years prior and that he had quit using illegal substances five years prior. Additionally, Bolger told Dr. Harris that he could only "sit for 15 minute intervals and stand for 15 minute intervals." (Tr. 275). But, Dr. Harris noted that Plaintiff was able to perform activities of daily living independently. On physical exam, Dr. Harris observed tenderness in Plaintiff's lower back and moderately decreased ranges of motion in all planes. Based upon this examination of Plaintiff, Dr. Harris opined that Bolger was capable of occasionally lifting or carrying up to 10-15 pounds at the waist level; however, Dr. Harris prohibited Plaintiff from performing any lifting from the floor level and from performing repetitive stooping or bending. Dr. Harris also opined that Bolger could sit and stand "for a maximum of 20 minute intervals for a maximum of 4 hours per day." (Tr. 276).

     The second pertinent medical opinion was rendered by Plaintiff's treating physician, Dr. Howard Friedman. On December 17, 2007, Dr. Friedman completed a Medical Source Statement

evaluating Bolger's physical RFC for work. (Tr. 566-67). In the document, Dr. Friedman opined that Plaintiff could lift and/or carry no more than five pounds. He also opined that Bolger could only stand, walk, and sit for a total of four hours in an eight-hour workday. Dr. Friedman noted that these limitations were supported by Plaintiff's subjective complaints and the results of magnetic resonance imaging ("MRI") taken of Plaintiff's lumbar spine which revealed moderate to severe neural foraminal narrowing and a disc bulge. Dr. Friedman also indicated that Bolger should rarely or never climb, stoop, crouch, kneel, crawl, reach, handle, push or pull. Lastly, the doctor noted that Bolger would need a sit/stand option.

### 1. Dr. Howard Friedman

In discussing the opinions offered by Plaintiff's treating physician, Dr. Friedman, ALJ Beekman explained that he did not fully credit all of the doctor's findings. Specifically, ALJ Beekman gave weight to Dr. Friedman's finding that Bolger could only stand, walk, and sit for a total of four hours in an eight-hour workday; however, the ALJ assigned less weight to Dr. Friedman's remaining findings, namely that Plaintiff was restricted from lifting or carrying more than five pounds, because the ALJ found that this restriction was inconsistent with the evidence in the record.

The undersigned overrules Plaintiff's objection to the ALJ's decision to assign less weight to the portion of Dr. Friedman's findings limiting Plaintiff to lifting and carrying more than five pounds. Although Dr. Friedman was Bolger's treating physician, this status alone did not entitle Dr. Friedman's opinions to controlling weight. Instead, opinions from a treating source are only entitled to such deference when they are both well supported and not inconsistent with other evidence in the record. *See Wilson*, 378 F.3d at 544. Here, ALJ Beekman reasonably determined that this portion

of Dr. Friedman's findings were not entitled to such weight because they were inconsistent with the evidence in the record.

Contrary to Bolger's suggestion, ALJ Beekman provided adequate reasons justifying his decision to discount Dr. Friedman's findings regarding Plaintiff's ability to lift and carry objects. The ALJ explained that Dr. Friedman's opinion on this issue was inconsistent with Bolger's own statements regarding his physical abilities. For example, the ALJ noted that Plaintiff's admission to being able to "care for his personal needs, cook, clean, launder, drive, shop, shoot pool, and bowl" (Tr. 16) all undercut Dr. Friedman's conclusion that Bolger could not lift more than five pounds, as well as Dr. Friedman's finding that Bolger should rarely or never climb, stoop, crouch, kneel, crawl, reach, handle, push or pull. Plaintiff did not object to the ALJ's characterization of his daily activities, therefore presumably, the ALJ's description of Plaintiff's activities was accurate. Consequently, the ALJ was not precluded from using this evidence to weigh the credibility of Dr. Friedman's findings. In response, Plaintiff purports that Dr. Friedman's finding was consistent with other evidence in the record, specifically Dr. Harris's findings.[2] Although Bolger contends that Dr. Friedman's opinions regarding Bolger's ability to lift and carry were arguably consistent with Dr. Harris's findings, this argument is unavailing because regardless of whether the doctors' findings can be considered as consistent, the fact remains that Dr. Friedman's opinions were inconsistent with Bolger's activities of daily living, and this discrepancy provided an adequate basis for the ALJ to

---

[2]Dr. Harris limited Plaintiff to lifting between 10-15 pounds at the waist level and no lifting from floor level. (Tr. 276). Dr. Friedman opined that Plaintiff could not lift more than five pounds. (Tr. 566). Bolger argues that because Dr. Harris specified that his lifting restrictions were based upon Bolger's position (i.e. waist or floor level) and Dr. Friedman's lifting restrictions were silent as to Bolger's position, the two doctors' opinions do not necessarily conflict.

discount Dr. Friedman's opinions.

Bolger also maintains that it was improper for the ALJ to assign little weight to this portion of Dr. Friedman's opinions because Plaintiff's MRI test results revealed moderate to severe bilateral neural foraminal stenosis, disc degeneration and a disc bulge, supporting Dr. Friedman's findings. While Plaintiff's MRI tests results disclosed problems in Plaintiff's lower back, the test results themselves do not validate Dr. Friedman's findings. Despite whatever conditions were discovered from the tests, it is unquestionable that those conditions did not preclude Bolger from being able to perform a range of daily activities. Thus, while the test results may have confirmed that Plaintiff suffered from a medically determinable impairment, Bolger's activities demonstrated that these impairments did not prevent him from engaging in a variety of tasks. Accordingly, neither the MRI results, nor the alleged consistency between Drs. Friedman's and Harris's opinions, offset the conflicting evidence showing that Plaintiff was not as limited as Dr. Friedman found.

### 2. Dr. Michael Harris

Bolger also challenges ALJ Beekman's rejection of Dr. Harris's restrictions on Plaintiff's ability to sit, stand and walk. The ALJ's opinion stated that he gave weight to the opinions of Dr. Harris which were consistent with his RFC finding. But, the ALJ remarked that Dr. Harris's findings limiting Bolger from more than 20 consecutive minutes of sitting, standing, or walking, were unsupported and appeared to be based solely upon Bolger's subjective complaints. ALJ Beekman further indicated that Dr. Harris's statements on this issue were inconsistent with Dr. Friedman's findings, and that given Dr. Friedman's status as Plaintiff's treating physician, the ALJ deferred to Dr. Friedman's conclusions regarding Plaintiff's ability to sit, stand and walk.

The undersigned finds no error with the ALJ's assessment of Dr. Harris's findings. To begin, the Court notes that Dr. Harris did not constitute as one of Bolger's treating physicians. Although Plaintiff seems to acknowledge this fact by his reference to Dr. Harris as a consultative examiner, Plaintiff continually suggested that the ALJ was obligated to adhere to the standards set forth in the treating source doctrine with regard to Dr. Harris's opinions. However, because Dr. Harris was not Plaintiff's treating physician, ALJ Beekman was not under any duty to treat Dr. Harris's opinions as if they were those of a treating physician (i.e. identify the reasons why Dr. Harris's opinions were not entitled to controlling weight, or articulate good reasons for the weight actually assigned to Dr. Harris's opinions). Instead, ALJ Beekman was only compelled to review Dr. Harris's findings under the same standards applied to all other medical opinion evidence in the record. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d). Therefore, Plaintiff's arguments objecting to the ALJ's failure to give controlling or deferential weight to Dr. Harris's opinions and failing to explain his reasons for this determination are moot as they are inappropriately based upon the application of the treating source doctrine to Dr. Harris's opinions. Rather, the Sixth Circuit has stated that the opinions of a physician who has only examined the claimant on one occasion are entitled to "no special degree of deference." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994) (*citing Atterberry v. Sec'y of Health & Human Servs.*, 871 F.2d 567, 572 (6th Cir. 1989)).

When examining the medical opinion evidence in the record, the governing regulations state that the ALJ will consider the following factors in determining how to weigh the opinion: 1) examining relationship; 2) treatment relationship; 3) length of treatment relationship; 4) nature and extent of the treatment relationship; 5) supportability; 6) consistency; and 7) specialization. *See* 20 C.F.R. §§ 404.1527(d)(1)-(6), 416.927(d)(1)-(6). ALJ Beekman adequately considered these factors

in determining how much weight to accord to Dr. Harris's opinions.  With regard to the factors contemplating the source's examining and treatment relationships with the claimant, ALJ Beekman noted that Dr. Harris's opinions were based upon his single examination of Plaintiff in February 2007, and that the doctor was not Bolger's treating physician.  (*See* Tr. 16).  As for consistency, the ALJ commented that Dr. Harris's findings regarding Bolger's ability to sit and stand were not consistent with Dr. Friedman's findings.  Therefore, because Dr. Friedman was Plaintiff's treating physician, the ALJ assigned greater weight to Dr. Friedman's opinions on this issue.  Plaintiff has failed to point to any other evidence in the record which was consistent with Dr. Harris's report limiting Bolger to standing, walking or sitting for a maximum of 20 minute intervals.  Consequently, it was reasonable for the ALJ to defer to Dr. Friedman's opinion rather than to accept the inconsistent opinion of Dr. Harris.

Turning to the next factor, supportability, ALJ Beekman explained that Dr. Harris did not provide any evidence to substantiate the highly restrictive limitations he placed on Bolger's ability to sit and stand, and that his opinions appeared to be based upon Bolger's subjective complaints. Bolger maintains that Dr. Harris's examination notes, demonstrating that Plaintiff's range of motion was decreased and Dr. Harris's review of x-rays of Plaintiff's spine, *could* have accounted for Dr. Harris's  restrictions.  Although Dr. Harris's report indicated that Bolger's range of motion in his back was moderately decreased in all planes, and his x-rays showed some degenerative changes, the ALJ considered this evidence in his review of Dr. Harris's opinion.  (*See* Tr. 16).  Nevertheless, the ALJ determined that this evidence did not substantiate the doctor's restrictive limitations.  This ruling is reasonable given the other normal or slightly below normal findings contained within Dr.

Harris's report.[3] Furthermore, while Bolger argues that this evidence *could* have accounted for Dr. Harris's findings, Bolger failed to explain how this was so.

Additionally, the Court is unpersuaded by Plaintiff's contention that the ALJ's decision to reduce the weight given to Dr. Harris's opinion because it appeared to be based upon Plaintiff's subjective statements was invalid. In support of this assertion, Bolger cites to case law from the Second Circuit stating, "[t]he fact that a treating or examining physician relies on a patient's 'subjective complaints hardly undermines his opinion as to her functional limitation as a patient's report of complaints, or history, is an essential diagnostic tool.'" (Pl.'s Br. at 9) (*citing Green-Younger v. Barnhart*, 335 F.3d 99, 107 (2d Cir. 2003)). To the contrary, in this circuit, a "treating physicians' opinions are only given [substantial] deference when supported by objective medical evidence." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 156 (6th Cir. 2009) (*citing Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Therefore, when a treating source's opinions are merely based on a claimant's subjective complaints, this circuit has generally upheld the ALJ's decision to discount the opinion. *See id.*; *see also Mitchell v. Comm'r of Soc. Sec.*, 330 F. App'x 563, 569 (6th Cir. 2009) ("A doctor's report that merely repeats the patient's assertions is not credible, objective medical evidence and is not entitled to the protections of the good reasons rule.").

In the instant case, Dr. Harris reported, "[t]he patient states he can sit for 15 minute intervals and stand for 15 minute intervals. He can lift up to 15 lbs." (Tr. 275). Subsequently, Dr. Harris

---

[3]Under the section of Dr. Harris's report titled "Back Exam", he noted that Bolger's pelvis was symmetric, and that his lordotic curvature was normal. (Tr. 275). The doctor also mentioned that there was no evidence of spasm or evidence of any trigger points. *Id.* Additionally, Dr. Harris stated that Plaintiff's motor strength was 5/5 in his upper and lower extremities, save for his right lower extremity which tested at 4/5. *Id.*

opined that Bolger was limited to lifting between 10 to 15 pounds at the waist level, and standing and sitting for a maximum of 20 minute intervals for no more than four hours a day. The similarities between Dr. Harris's finding and the statements from Plaintiff, along with the lack of objective evidence supporting the doctor's restrictions on Plaintiff's ability to stand and sit support the ALJ's conclusion that Dr. Harris's opinion was based upon Plaintiff's subjective complaints. As a consequence, the Court holds that the ALJ's decision to discount Dr. Harris's opinion on this issue was supported by substantial evidence.

The Court is also unmoved by Plaintiff's accusation that ALJ Beekman "cherry-picked" pieces of Dr. Harris's report which supported the ALJ's ruling while ignoring other pieces of Dr. Harris's report which contradicted the ALJ's ruling. Bolger is correct that an ALJ should not "pick and choose [] portions of a single report, relying on some and ignoring others, without offering some rationale for his decision", *Young v. Comm'r of Soc. Sec.*, 351 F. Supp.2d 644, 649 (E.D.Mich. 2004), but ALJ Beekman provided an explanation of why he assigned less weight to portions of Dr. Harris's opinion. A review of the ALJ's decision shows that the ALJ did not merely ignore the portions of Dr. Harris's report which contradicted the ALJ's RFC finding. Instead, ALJ Beekman acknowledged those portions of Dr. Harris's opinion and adequately explained why he decided that those parts of the doctor's opinion were not entitled to significant weight.

### B. Step Two Severe Impairment Determination

Finally, Bolger argues that ALJ Beekman erred by failing to deem his degenerative disc disease of the cervical spine as a severe impairment at step two of the sequential evaluation analysis. Plaintiff relies upon the results of a single x-ray taken on his back revealing some degree of degenerative changes in his cervical spine in support of this argument. It is well-established that this

circuit views the step two determination as a "de minimis hurdle in the disability determination process." *Childrey v. Chater*, 91 F.3d 143 (6th Cir. 1996) (Table) (*citing Higgs v. Bowen*, 880 F.2d 860, 862 (6th cir. 1988)). Thus, a claimant's impairment should only be labeled non-severe when it is a "slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work." *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 90 (6th Cir. 1985) (*citing Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984)). However, the ALJ's failure to label one's condition as a severe impairment does not constitute reversible error when the ALJ determines that the individual has at least one other severe impairment and continues to evaluate both Plaintiff's severe and non-severe impairments during the remaining steps in the evaluation analysis. *See Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987).

The record supports ALJ Beekman's decision to refrain from deeming Plaintiff's cervical degenerative disc changes as a severe impairment. Aside from the x-ray taken in April 2008, Plaintiff has failed to cite any medical report or opinion demonstrating that Plaintiff's problems in his cervical spine affected his functional capabilities. Notably, the mere diagnosis of a condition, does not speak to the severity of the condition. *Higgs*, 880 F.2d at 863. Therefore, while the x-ray showed degenerative changes, Plaintiff has not proven that these degenerative changes were severe enough to constitute as a severe impairment. Although Bolger submits that these x-rays corroborate the limitations on Plaintiff's ability to push, pull and reach announced by Dr. Friedman, he fails to cite to any medical evidence linking the x-ray results and Dr. Friedman's limitations. Rather, it appears that Plaintiff merely postulates that the two are related. Such assumptions are insufficient to justify a remand of the ALJ's decision.

15

Even assuming *arguendo* that the ALJ's failure was error, such an omission does not warrant remand. After the ALJ has determined that the claimant suffers from at least one impairment, the ALJ must continue with the remaining steps in the sequential evaluation process, considering all of the claimant's impairments, severe and not severe. *Maziarz*, 837 F.2d at 244; *Fisk v. Astrue*, 253 F. App'x 580, 583 (6th Cir. 2007). "[W]hen an ALJ considers all of a claimant's impairments in the remaining steps of the disability determination, an ALJ's failure to find additional severe impairments at step two 'does not constitute reversible error.'" *Fisk*, 253 F. App'x at 583. Here, ALJ Beekman found that Bolger suffered from the severe impairments of bipolar disorder and degenerative disc disease of the lumbar spine. The ALJ then proceeded with the remaining steps in the sequential evaluation process evaluating all of Plaintiff's impairments, severe and non-severe. Because the ALJ could have also considered Bolger's degenerative disc disease of his cervical spine in determining Plaintiff's RFC, his failure to find this impairment as a severe impairment at step two does not warrant remand. *See Maziarz*, 837 F.2d at 244.

Lastly, Plaintiff claims that ALJ Beekman's decision is deficient because he never considered these x-ray results showing degenerative changes in Plaintiff's cervical spine, as evidenced by his failure to reference such in his written decision. Yet, an ALJ is not required to reference every piece of medical evidence in the record in his opinion. *Boseley v. Comm'r of Soc. Sec.*, 397 F. App'x 195, 199 (6th Cir. 2010); *see Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party."). It is clear that ALJ Beekman was aware of Plaintiff's problems with his upper back as Bolger mentioned this ailment during his testimony at the hearing. Therefore, because the undersigned finds that the ALJ's opinion was based

16

upon his review of the entire record, the ALJ's failure to explicitly mention this x-ray is irrelevant. *See Boseley*, 397 F. App'x at 199.

## VI. DECISION

For the foregoing reasons, the Magistrate Judge finds that the decision of the Commissioner is supported by substantial evidence. Accordingly, the decision of the Commissioner is AFFIRMED.

IT IS SO ORDERED.

                                                                             s/ Kenneth S. McHargh  
                                                                             Kenneth S. McHargh  
                                                                             United States Magistrate Judge

Date: October 31, 2011.